The Chief Justice
delivered the opinion of the court.
In this cause a verdict was rendered for the plaintiff subject to the opinion of this court.
*The report of the trial shews that Decker, the lessor of the plaintiff, on the first day of April, 1825, leased the premises in question, to Adams, the defendant, by a lease of that date, for the term of one year, at the rent of eighty dollars; and that Adams remained in possession from the time of the demise, until and since the commencement of this suit, which was in the vacation between the terms of November, 1828, and February, 1829.
It is not controverted on the part of the defendant, that if an action of ejectment had been promptly instituted by Decker after the termination of the lease in April, 1826, he would have been enabled, under the relation of landlord and tenant, to have recovered the premises. But Adams contends that the undisturbed possession, for the period of *116 upwards of two years, which intervened, between the end of the term mentioned in the lease, and the commencement of this suit, changed his situation into that of a tenant from year to year, so as to require a notice to quit to be given to him, and consequently to render proof of such notice in addition to the evidence given on the trial necessary to sustain the verdict now rendered for the plaintiff.
No positive or overt act by the landlord, Decker, was proved or is alleged. The question then is whether the delay to commence the suit, -which upon the close of the term might have been successfully maintained, shall defeat the recovery of the plaintiff ? Whether the lapse of time made it incumbent on him to serve a notice to quit?— Whether silently permitting Adams to remain in possession, and to cultivate the land which, although not directly proved, the jury might have fairly presumed, so changed the nature of his holding or possession as to make him a tenant from year to year, and entitle him to the privileges and immunities of tha$ character ?
As a general rule, where the term is for a fixed period of time, and the period has expired, the tenancy is determined, and the landlord may immediately maintain an ejectment to recover the possession.
When the tenant, whose term has expired by efflux of time, instead of quitting the premises, as he ought to do, remains in possession, holding over as it is called, he is a wrong doer, and may be treated as such by the owner, his landlord. By the consent *of his landlord, his tenancy may be continued, and if such continuance by consent, be without any fixed limit, he becomes a tenant from year to year as it is called. This consent may be either express or implied; actual or constructive; by words or by some act recognizing or treating him as a tenant. But without a new contract, or some act on the part of the landlord from which a renewal of the contract may be implied, the person jn possession continues a wrong doer, is liable to be treated *117 as such, and must attribute to his original wrong and subsequent folly, any inconveniencies which may ensue. The mere unbroken silence and inaction of the owner will not improve or enlarge the character of the tenant’s possession.
Blackstone says, “ If a man takes a lease for a year, and after the year is expired, continues to hold the premises without any fresh leave from the owner of the estate, he is a tenant at sufferance and liable to be dispossessed by ejectment.” Christian, in his note, says, “ If the landlord after-wards receives rent or does any act by which he proves his assent to the continuance of the tenant, this turns the estate at sufferance into a tenancy ’from year to year.” In Right v. Darby, 1 D. and E. 162, Lord Mansfield said, “ When a lease is determinable on a certain event or at a particular period, no notice to quit is necessary, because both parties are equally apprised of the determination of the term. If there be a lease for a year and by consent of both parties the tenant continue in possession afterwards, the law implies a tacit renovation of the contract. They are supposed to have renewed the old agreement which was to hold for a year.” The general doctrine is here laid down that consent raises the implifieation, but in what way or by what act such consent is to be manifested is not explained.
In Doe v. Watts, 7 D. and E. 83, the question was whether there was any evidence of a tenancy between one of the lessors of the plaintiff and the defendant. It was held that the receipt of rent, as rent, was an acknowledgment of the tenancy. Lawrence, J., said, “ If the defendant were not a tenant, ho must have been a trespasser, and so he must have continued if ho had remained on the premises for any number of years.” In Right v. Bowden, 3 East 278, one of the court said, “ As to the questiou of tenancy from year to year, the payment of rent cannot *be evidence of a holding from year to year, if, as in the case of a conventionary rent like this, it be not a payment of rent as between landlord and tenant.” In Cobb v. Stokes, 8 East. 358, the *118 term of the lease which was for one year, expired on the 24th of June and a notice to quit or pay double rent was served on the 11th of August following. The ‘defendant contended that the landlord having omitted to put an end to' the tenancy at the end of the year, and having suffered the tenant to continue so long after as the 11th of August, must be taken to have agreed to his continuing in possession upon the original terms and could not entitle himself by any subsequent notice in the middle of the year to double rent. But the court held that the landlord not having, in the meantime, done any act to recognize the defendant as continuing; to be his tenant, was entitled to double rent from the time of the demand. In Jackson v. Parkhurst, 5 John. 128, there had been a lease from the lessor of the plaintiff by his attorney, to the defendants for three years ending on the 1st of April, 1806. In June, 1806, one of the defendants applied to the attorney to know if he had received any instructions as to leasing or selling the premises, who said that he had not, nor was he authorized to make any new-agreement with the defendants, but advised them to continue in possession until they heard from the lessor. On the 15th December, 1807, the attorney sent a written notice to the defendants demanding a surrender of the possession and that the lessor refused to let them occupy the premises. The court held, that after the expiration of the lease-, the tenants did not continue in possession by any new agreement with the plaintiff, nor did the plaintiff do any act whatever from which a renewal of the contract, or a consent to the tenants to hold for a year, could be inferred ; that the tenants were, therefore-, no' more than tenants at sufferance and were not entitled to notice to quit. Jackson v. Anderson, 12 John. 182, the defendant entered into possession of the premises in question as tenant to the lessors of the plaintiff under an agreement made on the 1st of May, 1810, for the premises for one year at a rent of one hundred dollars. He continued in possession to the bringing of the *119 ejectment, the time of which is not mentioned, but the trial took place in August, 1814. The case in all the material facts strongly resembles that before us. The defendant insisted *he was entitled to notice to quit which had not been given. The court said, “ Here is no evidence of any payment of rent, nor of any act dono by the lessors of the plaintiff after the expiration of the year, recognizing the defendant as their tenant so as to make him a tenant from year to year. But having held over after the expiration of his term, he is a tenant at sufferance and not entitled to notice to quit.” The case of Bedford v. M’Elheran, 2 Serg. and Raw. 49, maintains no different principle. The tenant had been suffered to remain for seventeen years in possession after the expiration of the lease, and C. J. Tilghman thought it might therefrom “ fairly be presumed that the defendant retained with the consent of the plaintiff.”
The general doctrine is correctly laid down in Kent’s Commentaries. “If the tenant holds over by consent, given either expressly or constructively, after the determination of a lease for years, it is held to be evidence of a new contract, without any definite period and is to be construed as a tenancy from year to year.” 4 Kent 110.
The defendant’s counsel on the argument relied mainly on the passage next to that just quoted. “The moment the tenant is suffered by the landlord to enter on the possession of a new year, there is a tacit renovation of the contract for another year, and half a year’s notice to quit must be given, prior to the end of the term.” But the sufferance of the landlord here mentioned, means, without doubt, the consent express or constructive spoken of in the former sentence ; or the learned commentator referred, not to the termination of a lease for a fixed period, as for a year, but to a subsisting tenancy from year to year so long as both parties pleased, when the entrance on a new year, without objection from the landlord, is deemed a continuance of the tenancy for that ‘year. Such is the case of Layton v. Field, 3 Salk. *120 222, which he cites. “ If a lease be made from year to year, quamdiu ambabus partibus placuerit, in such case-after the year is commenced, neither the lessor nor the-lessee can determine their wills for that year, because they have willed the estate certain for so long a time.” It would-be a perversion to suppose the commentator meant that on. a lease for a year, the landlord must enter or sue, at the-instant of its expiration; that one moment’s possession im the new year would secure the *tenant for that year ? or that the landlord might not abstain, for a day, a month,, or even a longer period. How otherwise could there be an estate at sufferance ?
In the present case there is no proof of consent, either actual or constructive by Decker, the landlord; and the-evidence, given on the trial was therefore, in my opinion,, sufficient to entitle him to recover.
Judgment for plaintiff.