# IN THE MATTER OF WALTER BRADY, AN IMPRISONED DEBTOR.

A judgment debtor, imprisoned on execution, who has disposed of his property with intent to defraud the creditor at whose suit he is imprisoned, is not entitled to his discharge under the provisions of the Revised Statutes, in relation to voluntary assignments by debtors so imprisoned (2 R. S., 31 *et seq*).

It is not necessary, to prevent such discharge, to show that the fraudulent disposition was made by the debtor with a view to the proceedings for his discharge ; it is sufficient, although made before the commencement of the action, where the order for his imprisonment was based upon the ground of such fraudulent disposition.

Where an opposing creditor establishes that the affidavit of the debtor required by said statute to be indorsed upon his petition (§ 5) is untrue, this is sufficient to show that "the proceedings, on the part of the prisoner, are not just and fair," within the meaning of said statute (§ 8).

*It seems* that to prevent a discharge, the intent must have been to defraud existing creditors, not those whose claims have been paid or have ceased to exist ; and that a creditor cannot contest the discharge who is in no way injured or defrauded.

A proceeding under said statute is a special proceeding, as defined by the Code (§§ 1, 2, 3); and an order of Special Term therein discharging the petitioner is a final order, and is appealable to the General Term, under the provisions of the act of 1854 (chap. 270, Laws of 1854), authorizing appeals in special proceedings. (ALLEN & MILLER, J.J., dissenting.)

The right to review a Special Term decision in a matter affecting a substantial right, being general and fundamental, will be deemed to exist unless the intent to destroy it is expressed with great clearness.

(Argued, February 20, 1877; decided, April 10, 1877.)

APPEAL, by Walter Brady, the petitioner, from order of General Term of the Supreme Court, in the first judicial department, reversing an order granted in proceedings, under article 1, title 1, chap. 5, part 2, of the Revised Statutes, which order directed the discharge of the petitioner from imprisonment on execution; and denying the application for such discharge. (Reported below, 8 Hun, 437.)

The facts appear sufficiently in the opinion.

*J. Langdon Ward*, for the appellant. The issue tried at Special Term was whether the applicant's petition and account were correct, and his proceedings thereunder just and fair. (2 R. S., Chap. 5, Art. 6; *People* v. *White*, 14 How. Pr., 501, 502; *People* v. *Bancker*, 5 N. Y., 121, 124; *People* v. *Brooks*, 4 How. Pr., 165; *Roswog* v. *Seymour*, 7 Robt., 427.)

*George W. Van Slyck*, for the respondents. The order of General Term was not appealable. (*Tracy* v. *Altmeyer*, 46 N. Y., 598; *People* v. *Delrecchio*, 18 id., 352; *Tilton* v. *Beecher*, 59 id., 180.) The act forbids a discharge from imprisonment, if the debtor has at any time fraudulently disposed of his property, or in case his proceedings have at any time not been just and fair. (2 R. S., 31, §§ 5, 6; *Gaul* v. *Clark*, 1 N. Y., Wk'ly Dig., 209; *In re Andril*, 2 Daly, 28; *In re Watson*, 2 E. D. Smith, 429; *Maas* v. *Latorre*, 6 Abb. Pr., N. S., 219; *Clark* v. *Wright*, 10 Wend., 584.)

EARL, J.   The debtor was arrested in two actions upon orders of arrest issued because he had disposed of his property with intent to defraud his creditors.   Judgments having been obtained in the actions, he was arrested and imprisoned by virtue of executions issued thereon.   He applied for his discharge, as an imprisoned debtor, under Part II, chap. 5, tit. 1, art. 6, of the Revised Statutes.   This was opposed by the judgment creditors who, by the affidavits upon which the orders of arrest were issued and upon other proof, established the fraudulent disposition of his property by the debtor.   By art. 6, an imprisoned debtor, desiring a discharge from imprisonment, is required to present a petition to the court praying for his discharge, setting forth the matters specified in section 4.   He must swear to the following affidavit, as prescribed in section 5, to be endorsed upon his petition :  " I, the within named petitioner, do swear that the within petition and account of my estate, and of the charges thereon, are in all respects just and true ;  and that I have not, at any time or in any manner, disposed of or made over any part of my property with a view to the future benefit of myself or my family, or with an intent to injure or defraud any of my creditors."   If upon the hearing the court shall be satisfied that the petition and account of the applicant are correct, and that his proceedings are just and fair, the discharge must be granted.

The affidavit is part of the proceeding, and that cannot be just and fair unless it is true.   It is important therefore to ascertain the scope and meaning of the affidavit.

It is not complained in this case that the petition and account of his estate and of the charges thereon were not just and true.   It was not shown that he had disposed of any of his property with a view to the future benefit of himself or his family.   The future benefit here mentioned was a benefit to be received and enjoyed after the date of the petition.   An imprisoned debtor could not be discharged who had thus secured for himself the benefit of property which ought to have been, and to be appropriated to the payment

of his debts. But the claim is that he had disposed of some of his property with intent to defraud his creditors, and the facts sustain this claim. What creditors are here meant? Plainly, creditors who could be defrauded by the disposition complained of. There must have been an intent to defraud existing creditors of whom the creditor contesting the discharge would be one. A fraud committed years before upon a class of creditors whose claims had been paid, or had ceased to exist, would not prevent a discharge, and a creditor could not contest the discharge on the ground of a fraudulent disposition of property, who was in no way injured or defrauded. The fraudulent disposition made here was with intent to defraud the very creditors who oppose the discharge.

That this construction of the statute may lead in some cases to unlimited imprisonment is possible. But we have nothing to do but to construe the law and enforce it as it is. We have no power to abrogate it or soften its hard features. At the time of the adoption of this statute, imprisonment for debt was authorized in all cases. The honest and dishonest debtors shared the same hard lot. The sole object of this statute was the discharge of honest debtors, who made an honest and full surrender of all their property for their creditors. It was not intended to benefit debtors who had disposed of their property for the purpose of defrauding the very creditors at whose suit they were imprisoned. Even under the non-imprisonment act passed subsequently, which in most cases abolished imprisonment for debt (chapter 300 of the Laws of 1831), such a debtor could not be discharged from imprisonment; and neither could he be discharged under article 3 of the same title and chapter above mentioned, commonly known as the two-thirds act; nor under articles four and five in reference to " proceedings by creditors to compel assignments by debtors imprisoned on execution, in civil causes," and in reference to " voluntary assignments by an insolvent, for the purpose of exonerating his person from imprisonment." The policy of the law is thus plainly indi-

cated. Without further discussion here, it is sufficient to express concurrence in the satisfactory opinion at General Term.

But it has been suggested that the appeal to the General Term was not authorized. We are of opinion that it was. This was a special proceeding as defined by the Code (secs. 1, 2 and 3 of the Code). By chapter 270 of the Laws of 1854, an appeal to the General Term of the Supreme Court is authorized from an order or final determination of the Special Term in any special proceeding. The order of the Special Term in this proceeding was therefore appealable, unless the statute regulating the proceeding makes it final. Section 6 of article 6, provides that the court " shall proceed in a summary way to hear and determine the proofs and allegations and may examine the applicant or his wife, or any other person on oath, and if satisfied that the petition and account of the applicant are correct, and that his proceedings are just and fair, shall order an assignment to be made of all his property," etc. There is no provision that the order shall be final or conclusive, but simply one that the order shall not be made until the court shall be satisfied. A court must always be satisfied of the existence of certain facts, as the basis of its action, before it can make an order, and yet it has never been held, in any reported case, that such language used in a statute, evinces a legislative intention that an order made shall be final and conclusive in the sense that it cannot be appealed from.

The law of 1813 (2 R. L., 408), regulating the opening and laying out of streets in the city of New York, provides for the appointment of Commissioners of Estimate and Assessment, and that their report shall be confirmed by the Supreme Court, and that such report, when so confirmed, shall be " final and conclusive." It has been held that no appeal will lie to the Court of Appeals from such an order of confirmation made by the Supreme Court—that the words " final and conclusive," were used to forbid an appeal.

(*Matter of Commissioners of Central Park*, 50 N. Y., 493 ; *Matter of Canal and Walker Streets*, 12 N. Y., 406.) The same words were held to prevent an appeal to the Court of Appeals from an order of the Supreme Court, made at a General Term, confirming the report of commissioners to appraise the compensation to be made for lands proposed to be taken under the general railroad act. (*In the Matter of the N. Y. C. R. R. Co.* v. *Marvin*, 11 N. Y., 276.)

The right to review the decision of a single Judge sitting at Special Term, in a matter affecting substantial rights, being general and fundamental, it must be deemed to exist, unless the intent to destroy it is expressed with great clearness. It cannot be said that such an intent is expressed in the statute under consideration.

The order of the General Term must be affirmed, but without costs of appeal to this court to either party.

FOLGER, RAPALLO and ANDREWS, J.J., concur. CHURCH, Ch.J., ALLEN and MILLER, J.J., dissent.

CHURCH, Ch. J., votes for reversal of order of General Term, and affirmance of order of Special Term, on the merits. ALLEN and MILLER, J. J., so vote on the ground that no appeal lies from the Special to the General Term.

Order affirmed.